

**FILED**

*11:04 am, 8/6/18*
**Stephan Harris**
**Clerk of Court**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

AMERICAN PETROLEUM INSTITUTE,

Petitioner,

vs.

UNITED STATES DEPARTMENT OF THE INTERIOR; RYAN ZINKE, in his official capacity as Secretary of the U.S. Department of the Interior; OFFICE OF NATURAL RESOURCES REVENUE; and GREGORY GOULD, in his official capacity as Director of the Office of Natural Resources Revenue,

Respondents.

Case No:  17-CV-083-F

---

## MEMORANDUM DECISION AND ORDER

Petitioner American Petroleum Institute (API) seeks review under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, of a final rule adopted by the federal agency respondents (collectively, ONRR) amending its civil penalty regulations, 81 Fed. Reg. 50,306 (August 1, 2016).  In general, API alleges the rule arbitrarily and unlawfully places federal and Indian oil and gas lessees at risk for enforcement actions under the most severe civil, and even criminal, penalties provided by the Federal Oil and Gas Royalty Management Act (FOGRMA), 30 U.S.C. § 1719. After considering the filings in this matter, the Court denies API's petition with the exception of its claims concerning the validity of 30 CFR § 1241.11(b)(5).    30 CFR § 1241.11(b)(5) is VACATED and API's petition is dismissed.

## BACKGROUND

The federal government competitively issues oil and gas leases onshore and on the Outer Continental Shelf, retaining a royalty interest based on the value of production from the lease. This royalty interest is accounted for by monthly reports and royalty payments lessees submit to ONRR. Prior to 1982, meaningful civil penalties were rarely imposed to help assure accurate lessee reporting and payment, and the government had limited legal authority to impose sanctions for late payment or nonpayment. This failure was highlighted in reports by the General Accounting Office (GAO) discussing the government's failure to collect royalties, along with the outright theft of oil and gas from federal and tribal leases. The Linowes Commission, appointed by the Secretary of the Interior (Secretary), investigated GAO's claims, and the Commission's findings were summarized by a Senate report issued in conjunction with the passage of FOGRMA:

> The Commission's findings basically confirmed the reports of the [GAO]. The federal royalty accounting system lacks effective accounting procedures and is understaffed. The system does not provide for the verification of data reported by oil and gas lessees, and lease account records are so unreliable that federal royalty managers often do not know which lessees have paid royalties and which lessees have not. Penalties for late payments or underpayment are rarely imposed. Because of these shortcomings, the Linowes Commission concluded that "the industry is essentially on an honor system."

S. Rep. No. 97-512, at 9 (1982).

Congress corrected this inadequate penalty system in FOGRMA, 30 U.S.C. § 1719. In short, Congress established three levels of civil penalty liability for persons who violate provisions of FOGRMA. This penalty system includes the lowest penalty level,

Section 1719(a),[1] which generally requires notice of a violation and an opportunity to comply before a penalty would be assessed.  S. Rep. No. 97-512, at 17 (1982); Appellate Record (AR) 59. Section 1719(b) imposes liability for a higher daily civil penalty based on continued "failure to take corrective action" within a certain period after notice or report of the violation under Section 1719(a)(1).[2]   Section 1719(c) covers certain enumerated violations and imposes liability for higher daily penalties without an

---

[1] "Section 12(a)" is codified at **30 U.S.C. 1719(a)**, and provides:

[a]ny person who—

(1) after due notice of violation or after such violation has been reported under subparagraph (A), fails or refuses to comply with any requirements of this chapter or any mineral leasing law, any rule or regulation thereunder, or the terms of any lease or permit issued thereunder; or

(2) fails to permit inspection authorized in section 1718 of this title or fails to notify the Secretary of any assignment under section 1712(a)(2) of this title--

shall be liable for a penalty of up to $500 per violation for each day such violation continues, dating from the date of such notice or report. A penalty under this subsection may not be applied to any person who is otherwise liable for a violation of paragraph (1) if:

(A) the violation was discovered and reported to the Secretary or his authorized representative by the liable person and corrected within 20 days after such report or such longer time as the Secretary may agree to; or

(B) after the due notice of violation required in paragraph (1) has been given to such person by the Secretary or his authorized representative, such person has corrected the violation within 20 days of such notification or such longer time as the Secretary may agree to.

[2] **Section 1719(b)** –

If corrective action is not taken within 40 days or a longer period as the Secretary may agree to, after due notice or the report referred to in subsection (a)(1), such person shall be liable for a civil penalty of not more than $5,000 per violation for each day such violation continues, dating from the date of such notice or report.

opportunity to cure.[3]  The highest level, Section 1719(d), prescribes "substantially higher penalties for certain more serious violations which are committed knowingly or willfully."[4]  CM/ECF Document (Doc.) 30-2, p. 6.  Section 1719(d) imposes penalty liability without an opportunity to cure.  Finally, Section 1720 imposes criminal liability against any person who commits an act for which a civil penalty is provided in Section 1719(d).[5]

---

[3] **Section 1719(c) –**

Any person who—

(1) knowingly or willfully fails to make any royalty payment by the date as specified by statute, regulation, order or terms of the lease;

(2) fails or refuses to permit lawful entry, inspection, or audit; or

(3) knowingly or willfully fails or refuses to comply with section 1712(b)(3) of this title, --
shall be liable for a penalty of up to $10,000 per violation for each day such violation continues.

[4] **Section 1719(d) –**

Any person who—

(1) knowingly or willfully prepares, maintains, or submits false, inaccurate, or misleading reports, notices, affidavits, records, data, or other written information;

(2) knowingly or willfully takes or removes, transports, uses or diverts any oil or gas from any lease site without having valid legal authority to do so; or

(3) purchases, accepts, sells, transports, or conveys to another, any oil or gas knowing or having reason to know that such oil or gas was stolen or unlawfully removed or diverted, --
shall be liable for a penalty of up to $25,000 per violation for each day such violation continues.

[5] **Section 1720 –**

For purposes of this appeal, ONRR amended its civil penalty regulations, "clarifying and simplifying existing regulations for issuing a Notice of Noncompliance (NONC), Failure to Correct Civil Penalty Notice (FCCP)), and Immediate Liability Civil Penalty Notice (ILCP)." 81 Fed. Reg. 50306-1 (August 1, 2016). In summary and for purposes of the issues presented in this appeal:

First the rule provides a clear distinction between these three different types of notices. A **NONC** does not assess a civil penalty, but it identifies a violation, specifies corrective action and provides a deadline for correction to avoid a civil penalty. 30 CFR § 1241.3. A **FCCP** assesses a civil penalty if the lessee fails to correct the violation identified in a prior NONC. *Id.* An **ILCP** identifies a violation <u>and</u> assesses a civil penalty. *Id.* An ILCP does not require any prior NONC or opportunity to correct, and it covers those more serious violations which are knowing or willful, as authorized by Sections 1719(c) and (d). A hearing before an ALJ may be requested on a NONC, FCCP and ILCP, and the ALJ may stay the accrual of a civil penalty upon the condition to post a bond or surety instrument, or demonstrate financial solvency. 30 CFR §§ 1241.5, 1241.11. However, the benefit of a stay is forfeited if the ALJ determines that the defense is frivolous and a penalty is owed. 30 C.F.R. § 1241.11(b)(5). At the hearing, the government has the burden to prove, by a preponderance of the evidence, the fact of the violation and the basis of the amount of the civil penalty. 30 CFR § 1241.8.

---

Any person who commits an act for which a civil penalty is provided in section 1719(d) of this title shall, upon conviction, be punished by a fine of not more than $50,000, or by imprisonment for not more than 2 years, or both.

Second, the rule clarifies[6] the terms "maintains," "submits," and "knowingly or willfully" as they relate to royalty and production information, collection, and management. Specifically, the phrase "**maintains false, inaccurate, or misleading information**" includes "providing information to an ONRR data system, or otherwise to us for our official records, and later learning that the information that you provided was false, inaccurate, or misleading, and you do not correct that information or other information that you provided to us that you know or should know contains the same false, inaccurate, or misleading information." 30 CFR § 1241.3. The phrase "**submits false, inaccurate or misleading information**" means "that you provide false, inaccurate or misleading information to an ONRR data system, or otherwise to us for our official records." *Id*. The phrase "**knowingly or willfully**" includes "an act or failure to act committed with: (i) actual knowledge; (ii) deliberate ignorance, or (iii) reckless disregard of the facts surrounding the event or violation; it requires no proof of specific intent to defraud. *Id*.

Third, in considering the amount of a penalty to assess, the rule provides that ONRR will not consider the royalty consequence of the underlying violation for certain specified penalty assessments. 30 CFR § 1241.70(b).

In this challenge, API argues the rule is arbitrary and capricious and exceeds ONRR's authority under FOGRMA. First, API argues the definitions of the terms

---

[6] API contests this claim by its argument that the definitions improperly expand on or redefine these terms.

"maintains" and "submits", and the phrase "knowingly or willfully" sweep violations and conduct into the most severe penalty tier of FOGRMA Section 1719(d), beyond what Congress enacted.   API contends Congress limited Section 1719(d) to criminally punishable theft and fraud, and through these definitional changes, ONRR has eviscerated Congress' carefully crafted statutory penalty hierarchy.   Second, API claims the new penalty scheme illegally and arbitrarily imposes blanket, strict, vicarious liability on lessees for all employee actions.   Third, API argues ONRR has broadened the scope of conduct that may be penalized under 30 U.S.C. § 1719(c), by allowing any alleged recordkeeping issue, such as a delay in providing requested records, into an impediment of an "audit," thereby triggering higher penalties without prior notice to the lessee. Fourth, API challenges the rule precluding consideration of the royalty consequence of the underlying violation in assessing certain specified civil penalties, arguing it ignores the principles of proportionality.   Fifth, API argues the rule allowing the ALJ to forfeit the benefit of a stay in certain circumstances denies procedural due process.   Finally, API claims the rule fails to consider its economic impacts.

## DISCUSSION

I.   Threshold Questions

    A.   *Standing*

As an initial matter, ONRR argues that API lacks Article III standing to pursue its claims for relief because it has failed to demonstrate any "injury-in-fact" as a result of the rule.   Article III standing is a "threshold jurisdictional question" that a court must decide

before it may consider the merits. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-101 (1998).

Here, API asserts standing to sue on behalf of its oil and gas members and alleges that several members operate oil and gas leases on federal and Indian lands with royalty obligations. API submitted detailed comments on the proposed rule, some of which were not accepted. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Sevs.*, 528 U.S. 167, 181 (2000).

Therefore, to establish Article III standing, API bears the burden of demonstrating, through its members, that: (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S.Ct. 1142, 1149 (2009). This requirement assures that "there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 221, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Where such a "real need" does not exist, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power . . . away from a democratic form of

government," *Summers, supra*, 555 US at 1149, citing *United States v. Richardson*, 418 U.S. 166, 179, 94 S.Ct. 2940 (1974) (Powell, J., concurring).

There is no dispute that Section 1719 was enacted to enforce FOGRMA compliance by giving lessees a strong reason to adhere to the law and correct violations promptly, rather than face "a steeply rising civil penalty liability for serious violations knowingly or willfully committed." S. Rep. No. 97-512, at 17 (1982). API's chief complaint is that the rule improperly and illegally captures less serious errors and conduct into FOGRMA's most severe penalty provisions of Sections 1719(c) and (d), as opposed to Sections 1719(a) and (b), thus subjecting its members to exponentially higher civil penalties without notice and an opportunity for correction. The causal link between the allegedly unlawful rule and the alleged injury (i.e., much higher penalty liability without a NONC) is not speculative. No one has suggested that there would be anything other than swift and sure penalty imposition for Section 1719(c) and (d) violations. Thus, the threatened injury of severe penalties without a prior NONC is sufficiently imminent to establish standing for API's members. Further, the other requirements for associational standing are met and apparently undisputed. The interests API seeks to protect are germane to their organizational goals of ensuring a favorable regulatory environment and economic health for oil and gas companies. Finally, there is no apparent reason why this suit requires the participation of individual companies. Therefore, API has standing to sue.

B.    *Ripeness*

ONRR argues API's claims are neither constitutionally nor prudentially ripe.  The ripeness doctrine has both constitutional and prudential facets.  *See Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (*citing Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010)).  With respect to constitutional ripeness, ONRR argues API has made no demonstration of any present injury, and its complaints relate only to how the rule *might* be applied in the future.  As such, API's claims are not constitutionally ripe.  As to prudential ripeness, ONRR argues factual development would be helpful because many of API's claims rely on speculation as to how ONRR might issue penalties in the future, resulting in the majority of its arguments presented as hypotheticals.  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Farrell-Cooper Mining Co. v. DOI*, 728 F.3d 1229, 1238 (10th Cir. 2013) (*citing Texas v. United States*, 523 U.S. 2996, 300 (1998)).

API responds by arguing it's standing satisfies constitutional ripeness.  As to prudential ripeness, API asserts it is not challenging the validity of a penalty imposed under certain facts, but the validity of definitional and regulatory changes that are final and fail to properly implement FOGRMA.  API argues this pure legal challenge does not require any specific factual predicate and is presumptively reviewable.  *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1282 (D.C. Cir. 2005) ("We have also often observed that a purely legal claim in the context of a facial challenge, such as appellants' claim, is presumptively reviewable").

The Court agrees with API. API's standing satisfies constitutional ripeness. *Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999). As to prudential ripeness, for a facial challenge FOGRMA either supports the new penalty regime or it does not. API's legal claims under the APA are ripe for review.

II.   Standard for Review

Under the APA, courts "shall . . . hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(A), (C). An agency's decision is arbitrary and capricious if the agency (1) "entirely failed to consider an important aspect of the problem," (2) "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," (3) "failed to base its decision on consideration of the relevant factors," or (4) made "a clear error of judgment." *New Mexico ex rel. Richardson v. BLM*, 565 F.3d 683, 704 (10th Cir. 2009) (quoting *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1280 (10th Cir. 2007)). Judicial review of ONRR's rule is based on the law and administrative record. *Olenhouse v. Commodity Credit Corp*, 42 F.3d 1560, 1575 (10th Cir. 1994).

"The APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons, and the court cannot substitute its judgment for that of the agency." *Utahns for Better Transp*, 305 F.3d 1152, 1164 (10th Cir. 2002) (citation omitted). "A presumption of

validity attaches to the agency action and the burden of proof rests with the appellants who challenge such action." *Citizens' Comm. to Save Our Canyons v. Krueger*, 513 F.3d 1169, 1176 (10th Cir. 2008) (quoting *Colo. Health Care Ass'n v. Colo. Dep't of Soc. Servs.*, 842 F.2d 1158, 1164 (10th Cir. 1988)).  However, this presumption does not shield the agency from a "thorough, probing, in-depth review." *Olenhouse*, 42 F.3d at 1574.  Further, the "[d]etermination of whether the agency acted within the scope of its authority requires a delineation of the scope of the agency's authority and discretion, and consideration of whether on the facts, the agency action can reasonably be said to be within that range.  *Id.*  Finally, because API has challenged the rule on its face, "[t]o prevail in . . . any facial challenge to an agency's regulation, the plaintiffs must show that there is 'no set of circumstances' in which the challenged regulation might be applied consistent with the agency's statutory authority." *Scherer v. U.S. Forest Serv.*, 653 F.3d 1241, 1243 (10th Cir. 2011) (citing *Reno v. Flores*, 507 U.S. 292, 301 (1993)).

III.   API's Challenge to the Rule's Definitions

The terms "maintains" and "submits" are specifically used in Section 1719(d)(1). The phrase "knowingly or willfully" is also used in Section 1719(d) as well as in Section 1719(c).[7]  Because the definitions at issue are used in Section 1719(d), API frames its arguments in the context of the assertion that Congress limited Section 1719(d) violations to criminally punishable theft and fraud.  In making this argument, API points to the

---

[7] API takes no position on the legality of the Rule's "knowingly or willfully" definition as applied to violations under Section 1719(c).  Doc. 30, p. 43, n. 13.

exposure for criminal penalties tied to violations addressed by Section 1719(d), as well as the types of violations discussed in Section 1719(d)(2) and (3) which essentially include taking, transporting, purchasing or using stolen or unlawfully removed oil or gas. As the Court understands the argument, because two of the three subsections focus on theft, and criminal liability may be imposed, Congress intended the first subsection discussing false information to be limited to acts amounting to fraud.

In terms of legislative history, the Committee reports have the following discussion:

> [T]he Committee feels strongly that administrative discretion should not be the principal mechanism through which the severity of punishment is matched to the seriousness of the offense.
> Therefore, the Committee amendment attempts to distinguish between those violations which ought to lead to a very large civil penalty and those for which liability should be reduced. In making this distinction a balance must be struck between the need to deter violations of the Act and the need to avoid a situation in which exposure to very severe penalty liability for relatively minor or inadvertent violations of necessarily complex regulations becomes a major disincentive to produce oil or gas from lease sites on federal or Indian lands. The Committee attempted to achieve this balance by providing a requirement of notice of violation and a lower civil penalty limit for certain violations of the Act and a steeply rising civil penalty liability for serious violations knowingly or willfully committed.

Doc. 30-2, p. 5.

> The approach the Committee used for civil penalties was to provide lesser penalties for failure to comply with a term of an oil and gas lease, license, or permit, or any provision of this bill . . ., regulations or orders. For the more serious acts such as knowingly or willfully submitting false records, accepting stolen oil or gas, or diverting oil or gas from a lease site without authority to do so, the Committee provided stiffer penalties.

Doc. 30-3, p. 7.

API's argument is not supported by the statute or its legislative history.  First, Congress specifically used the phrase "false, inaccurate, or misleading" information in Section 1719(d)(i), not fraudulent information.  The term "fraud" is typically understood to describe words or silence meant to mislead or deceive in regard to material facts. *Stewart v. Wyoming Cattle-Ranche Co*., 128 U.S. 383, 389-390 (1988).  Turning to a more recent source, "intent to defraud" means "to act willfully with intent to deceive or cheat, ordinarily for the purpose of causing financial loss to another or bringing about financial gain to one's self."  10th Cir. Criminal Pattern Jury Inst. 2.50.1 (updated Feb. 2018).

Other than the statutory phrase "knowingly or willfully" which is addressed below, there is no support in the statute, its history, or the case law to suggest Congress intended to require the Secretary to show proof of an intent to deceive or materiality. Indeed, one of the greatest concerns in the drafting of FOGRMA was a suggested amendment limiting the prohibition on the preparation, maintenance, or submission of inaccurate or misleading information to "significantly" inaccurate or "materially" misleading information.  The government's response was that these two adverbs "would give us serious problems" and "sanction the submission . . . of misleading information and make us then prove it was "materially" misleading before taking any action.  Doc. 30-2, p. 11.  The amendment was not adopted.  This legislative history, along with the language of the statute supports the conclusion that Section 1719(d)(1) is not limited to fraud, but includes the broader conduct of preparing, maintaining, or submitting false, inaccurate, or misleading information done knowingly and willfully.  API's arguments

14

concerning the phrase "knowingly and willfully," and whether Section 1719(d) is limited to criminally specific intent, are addressed below.

A.    *"Maintains"*

API challenges the definition of "maintains," arguing it should refer only to a lessee's internal keeping of company records and thus harshly penalize conduct amounting to "cooking the books."  API contends the new definition includes any "failure to correct" any reporting violation on "any ONRR data system" after the lessee receives even the most informal or indirect form of notice from ONRR.  API argues this definition improperly captures simple reporting errors innocently made and later brought to a lessee's attention, thereby bringing such conduct into FOGRMA's most severe penalty provisions of Section 1719(d) as opposed to Sections 1719(a) and (b).  API contends this eviscerates Congress' carefully crafted statutory penalty hierarchy.

ONRR argues it reasonably defined "maintains," which is undefined in FOGRMA, and API's argument that the term cannot cover reports on file with ONRR after submission is unfounded.  ONRR points to several ordinary definitions of "maintains" and argues it includes keeping or carrying on a thing or information as valid or true.  Thus the term properly encompasses a continuing affirmation that the information provided to ONRR is true and correct.  ONRR argues Congress was concerned with ensuring accuracy in the entire royalty accounting system, thus it is illogical to believe Congress was only concerned with the accuracy of internally-kept records but not the accuracy of the records kept on file with the agency.

API replies by arguing the issue isn't whether records kept on file with the agency are accurate, but whether the failure to correct inaccurate records once brought to the lessee's attention was intended by Congress to come within the ambit of the most severe penalty tier of Section 1719(d), rather than the penalties provided by Sections 1719(a) and (b).

After considering the arguments of the parties, the Court agrees with ONRR. Congress intended to impose substantially higher penalty liability under Section 1719(d) "for certain more serious violations which are committed knowingly or willfully." Doc. 30-2, p. 6.    ONRR must carry its burden of proof in showing the violation was committed knowingly or willfully.   The only issue here is whether it is reasonable to conclude Congress intended the lessee's "knowing or willful" failure to correct false or misleading records contained in the ONRR data system to be one of the "more serious violations."[8]   Given the history underlying FOGRMA's enactment, it is reasonable to conclude such a knowing and willful failure is a more serious violation covered by Section 1719(d).   The shortcomings of the old royalty management system were well documented.   Fundamental to these shortcomings was the fact that the oil and gas lease accounts kept by the government were in disarray with mostly erroneous balances. Doc. 36-2, p. 16.   The government failed to collect essential data.   *Id*.   "Furthermore, the data

---

[8] API repeats its argument that Section 1719(d)(1) only covers falsified records kept to defraud federal auditors and commit paper theft of oil and gas royalties ("cooking the books").   The argument focusing on fraud has been previously addressed by the Court and rejected.

[the government] did manage to collect and properly file was supplied by industry without verification; thus allowing industry to operate on an honor system." *Id.*

In the context of this history and the corrective purpose underlying FOGRMA, it is simply unreasonable to severely penalize knowing maintenance of false or misleading information internal to the lessee's records, without placing at the same level for liability, the knowing maintenance of false or misleading information within the official records of ONRR.[9]

B.     *"Submits"*

API challenges the definition of "submits," claiming it fails to include the proposed rule's definition of "submission," i.e., that "you know, or should have known, the information that you provided was false, inaccurate or misleading at the time you provided the information." AR1211.  API contends it is not enough that a lessee sends reports to ONRR that later are shown to contain errors; under Section 1719(d) a lessee must know of false information in its reports at the time it submits them.  Based on a variety of examples and questions presented by API in its brief, API contends the definition creates "limitless ONRR discretion and liability."

---

[9] This conclusion is consistent with a recent IBLA decision which concluded that, when a party has already submitted a report and then becomes aware the report is inaccurate, and fails to correct the report, that party has knowingly or willfully maintained inaccurate information and ONRR may assess a civil penalty under Section 1719(d)(1). *Statoil USA E&P, Inc. v. ONRR*, 185 IBLA 302 (Apr. 29 2015).  AR2178.

ONRR argues that regardless of the amended rule's definition of "submits," to impose a penalty under Section 1719(d)(1), ONRR must meet the requirements of that section.   Section 1719(d)(1) imposes a "knowing or willful" requirement. Thus the amended rule's definition of "submit" could not—and does not purport to—modify the statutory *mens rea* requirement.

The regulation at issue reads as follows: "Submits false, inaccurate, or misleading information means that you provide false, inaccurate, or misleading information to an ONRR data system, or otherwise to us for our official records."  30 CFR § 1241.3.  This definition equates the word "submits" with the word "provides" and replaces the statutory phrase "reports, notices, affidavits, records, data, or other written information" with the word "information."  It also limits liability as the information must be provided "to us for our official records."  The definition does not purport to modify the statutory requirement that such provision of information must be done knowingly or willfully, nor does it relieve the ONRR of its burden of proof as to the requisite *mens rea*.  API's argument that this definition creates limitless discretion and liability is unfounded.

C.      *"Knowingly or Willfully"*

API challenges the definition of "knowingly or willfully," arguing Section 1719(d) requires specific intent and the rule impermissibly lowers the requisite *mens rea* from a criminal standard to a mere "reckless disregard" civil standard.   In support of this argument, API asserts Section 1719(d) comprises exclusively criminal-level violations as indicated by the fact Congress made the civil violations in Section 1719(d) a predicate to criminal liability.  Thus the provisions should be interpreted consistently, adhering to the

criminal standard, meaning actual knowledge of wrongfulness or deliberately wrongful action.

ONRR responds by arguing there is no dispute, based on FOGRMA's text and legislative history, that Sections 1719(d) and 1720 are two distinct provisions, with different goals. Section 1719(d) is a civil penalty provision imposing liability for serious violations knowingly or willfully committed, and Section 1720 imposes criminal liability for those serious acts identified and committed under Section 1719(d). API's argument improperly attempts to conflate the two provisions into one single criminal penalty provision. ONRR argues the rule is reasonable as "reckless disregard" is often applied as the *mens rea* for a willful violation in a civil context and is appropriately applied to violations under Section 1719(d), a civil penalty provision.

The issue presented is whether ONRR erred by including "reckless disregard" as a component of the permissible *mens rea* showing under Section 1719(d). The Court concludes ONRR's definition of "knowingly or willfully" is reasonable. API's argument that "knowingly or willfully" must be given a consistent definition in both sections is unsupported. First, API fails to provide any counterpart criminal statute which uses the phrase "knowingly **or** willfully." Indeed, the use of the word "willfully" (without "knowingly") in the federal criminal code is limited, including but perhaps not entirely limited to criminal tax cases, odometer fraud cases, health care anti-trust kickback statute cases, anti-structuring cases, certain securities cases, certain firearms cases, and failure to pay child support cases. See, e.g., *United States v. Pomponio*, 429 U.S. 10 (1976); *Ratzlaf v. United States*, 510 U.S. 135 (1994); *United States v. O'Hagan*, 521 U.S. 642

(1997); *Bryan v. United States*, 524 U.S. 184 (1998); *United States v. Jain*, 93 F.3d 436 (8th Cir. 1996); *United States v. Williams*, 121 F.3d 615 (11th Cir. 1997). Consequently, the Court is unable to find any recognized criminal *mens rea* definition for "knowingly or willfully."

Second, even where the word "willfully" is used for either criminal or civil liability, its meaning varies based on context. As discussed in one case:

> We have said before that "willfully" is a word of many meanings whose construction is often dependent on the context in which it appears," *Bryant v. United States*, 524 U.S. 184, 191, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (internal quotation marks omitted); and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard but reckless ones as well . . . .

*Safeco Insurance Co. v. Burr*, 551 U.S 47, 57 (2007). In criminal law, the word "willfully" "differentiates between deliberate and unwitting conduct, and typically refers to a culpable state of mind." *Bryant v. United States*, 524 U.S. at 191. Thus, "willfully" in the criminal context can require proof beyond "knowingly," because "'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law." *Id.* at 192. However, for civil penalty assessment, even the severe 100% penalty under the complex tax code (26 U.S.C. § 6672 for willful failure to remit), "[t]he willfulness requirement is ... met if the responsible officer shows a 'reckless disregard of a known or obvious risk that trust funds may not be remitted to the government . . . ." *Denbo v. United States*, 988 F.2d 1029, 1033 (10th Cir. 1993) (citation omitted). Thus, "reckless disregard" is a clearly recognized concept for the assessment of civil penalties, even severe penalties in the context of a complex regulatory structure.

API argues for consistency between the two sections, claiming anything else would expose their members to criminal liability as Section 1719(d) is a predicate to the criminal penalties in Section 1720. The Court rejects this argument. First, liability under Section 1719(d) is just one element of the offense described in Section 1720. In other words, a violation of Section 1719(d) is necessary for conviction under Section 1720, but it is not sufficient. Other elements, including a much higher burden of proof (proof beyond a reasonable doubt versus a preponderance standard) applies for a criminal conviction. Further, the Court is reaching no conclusion on the *mens rea* required for Section 1720. After all, this is a different legal provision with criminal sanctions, and context matters. It would logically be expected that "knowingly or willfully" may be given a different interpretation in a criminal statute, warranting jury instructions not controlled by the ONRR definition of "knowingly or willfully" for civil penalty assessment.

Further, if "willfully" is construed the same as in the criminal law context, there would be no reason for its inclusion, as ONRR would satisfy Section 1719(d) for penalty assessment simply by meeting its burden of proving a knowing violation. In other words, there would be never be a need to show a culpable state of mind. The Court will not construe the phrase "knowingly or willfully" in a manner to render one part of it superfluous, the Court must give every term in the statute effect if at all possible. *States v. Menasche*, 348 U.S. 528, 538-539 (1955).

In conclusion, given that the definition at issue is used for assessment of **civil penalties** for serious violations, and context must influence construction, the Court

concludes ONRR's definition of "knowingly and willfully" to include "reckless disregard" is reasonable.[10]

IV.    Strict Vicarious Liability

API claims 30 CFR § 1241.60 illegally and arbitrarily imposes blanket, strict, vicarious liability for all employee actions without prior notice or a period to correct. The subpart of the regulation at issue discusses a list of information ONRR may use as evidence of a knowing or willful violation. The list includes "[t]he act and failure to act of your employee or agent."  30 CFR 11241.60(c)(1).  API argues this inclusion disregards the employee's position within the company or the employee's relation to federal or Indian lease royalty reporting and payment obligations.  Moreover, API argues under § 1241.60(c)(4), agency communications as informal as a telephone call or email from any ONRR employee to any company employee can create such severe vicarious liability.  API argues this rule is contrary to the law that only authorized agents can bind a corporation.  *See* Restatement (Third) of Agency § 1.01 (2006).  API argues vicarious liability for punitive damages like FOGRMA's civil or criminal penalties requires a showing that an "employee serving in a 'managerial capacity' committed the wrong while acting in the scope of employment," that the principal was reckless in hiring an unfit agent, or that the principal authorized or approved the act. *Kolstad v. American Dental Ass'n*, 527 U.S. 527, 542-543 (1999).  API also points out this vicarious liability

---

[10] This conclusion is consistent the IBLA's recent ruling in *Cabot Oil & Gas Corp.* v. ONRR, Case No. CP 11-016 (DCHD June 5, 2015).  AR2158.

scheme also conflicts with ONRR's other, preexisting regulations specifying how and which employees may receive official ONRR communications.  30 C.F.R. § 1218.540.

ONRR responds by arguing the rule does not impose "strict vicarious liability" as the record demonstrates that ONRR expressly rejected any imposition of "strict vicarious liability" primarily because strict liability by definition does not impose a scienter requirement for finding liability, while FOGRMA imposes "knowing or willful" for a finding of liability under Section 1719(d).  *See* AR2429.  ONRR also complains that API's argument about when or whether liability will be imposed is speculative and hypothesized.  Further, ONRR agrees that this rule does not allow informal notification, as formal correspondence is sent to a lessee's designated representative.  Finally, ONRR points out that civil penalties are not "punitive damages."

As to the reasonableness of the regulation in 30 CFR § 1241.60(c), the Court agrees with ONRR.  This rule does not presume to impose vicarious liability, strict liability, or strict vicarious liability.  It is merely notice of what information ONRR may seek to use as evidence.  The rule does not purport to address what evidence might actually be used or admitted, or the weight to be given to any admissible evidence.  Issues concerning the scope of employment, the duties or authority of the employee or agent, whether the employee or agent was a designated representative, or the form, manner of delivery, or appealability of communications, are not before the Court by virtue of a facial attack to the regulation at issue. Rather, these will, if ever, be issues for ONRR and the adjudicating ALJs when the rule is ultimately applied.  On its face, the regulation providing notice of the type of information which may be used as evidence is not

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Further, API, by its fact-based hypotheticals and speculations, fails to show that there is "no set of circumstances" in which the challenged regulation might be applied consistent with the agency's statutory authority. *Scherer v. U.S. Forest Serv.*, 653 F.3d at 1243 (citation omitted).

V.    FOGRMA's Section 1719(c)

API claims ONRR has broadened the scope of conduct that may be penalized under 30 U.S.C. § 1719(c), by allowing any alleged recordkeeping issue, such as a delay in providing requested records, into an impediment of an "audit," thereby triggering higher penalties without prior notice to the lessee.  The offensive language at issue is the appendage to 30 C.F.R. § 1241.60(b)(1)(ii) which adds, "including refusal to keep, maintain, or produce documents."  API argues the plain purpose of the statute was to impose liability on a lessee that literally or figuratively "barred the door" when ONRR needs to audit the lessee's records. API contends the rule now allows ONRR to convert any alleged lessee recordkeeping issue, such as a delay in providing requested records, even if no audit exists, into a violation of Section 1719(c), which carries a significantly higher maximum daily penalty than Sections 1719(a) or (b), and without notice and an opportunity to correct.  API also complains that the rule automatically imputes an alleged impediment of an audit by any "employee or agent" to create Section 1719(c) liability for an entire company.

ONRR responds by arguing that API misconstrues the so-called "appendage" in 30 C.F.R.§ 1241.60(b)(1)(ii).  According to ONRR, this language merely provides a

clarifying list of examples of what could constitute a refusal to permit an audit under Section 1719(c), and is not a "significant departure" from FOGRMA.

Again, the Court agrees with ONRR. The offending language which adds "including refusal to keep, maintain, or produce documents" follows the word "audit." This is a reasonable example of a Section 1719(c) violation for impeding an audit. If records are not kept, maintained or produced, an audit is impeded just as much as if the lessee "bars the door." ONRR does not claim this example is an independent basis for assessing the higher civil penalty apart from an audit. Again, on its face, the regulation providing this example is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. As noted above, fact-based hypotheticals and speculations are insufficient to show that there is "no set of circumstances" in which the challenged regulation might be applied consistent with the agency's statutory authority. *See, Scherer*, 653 F.3d at 1243. For the same reasons as discussed above, the Court rejects API's invitation to vacate the rule on the speculation about employees or agents.

## VI.   Royalty Consequences

API challenges the rule precluding consideration of the royalty consequence of the underlying violation in assessing certain specified civil penalties, arguing it ignores the principles of proportionality between the amount of the penalty and the severity of the underlying offense, and infringes on lessees' rights under the Due Process Clause and Excessive Fines Clause of the U.S. Constitution. The Substantive Due Process Clause of the Fifth Amendment limits the fines or damages to what is reasonable in light of the actual damages. *See State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426

(2003).  The Excessive Fines Clause of the Eighth Amendment similarly limits ONRR's ability to extract civil or criminal penalty payments from lessees. *Austin v. United States*, 509 U.S. 602, 609-10 (1993).

ONRR argues API is wrong that 30 C.F.R. § 1241.70(b) forecloses the consideration of royalty consequences in all cases where ONRR assesses a civil penalty for a violation. The rule does not preclude the agency from considering royalty implications under 30 C.F.R. § 1241.60(b)(1)(i) which provides that ONRR may assess a civil penalty if a non-complying entity "[k]nowingly or willfully fail[s] to make any royalty payment by the date specified by statute, regulation, order or term of the lease." As to those instances when royalty implications are not considered, ONRR argues API cannot show through a facial challenge that there is no circumstance under which ONRR's failure to consider royalty consequences would be lawful.

As with the previous section, the Court agrees with ONRR that API has failed in its burden under *Scherer*.  Proportionality and substantive due process must await factual development.   API fails to identify any law requiring consideration of royalty consequences, especially when the conduct subject to civil penalty does not involve a royalty payment or non-payment.  While the Court might agree that it may be unwise to limit discretion as the rule provides, that is not an issue for judicial review.  The Court cannot substitute its judgment for that of the agency. *Utahns for Better Transp*, 305 F.3d at 1164.

VII.   Stay Pending Administrative Appeal

API disagrees with the rule allowing the ALJ to forfeit the benefit of a stay of penalty accrual on the determination that the defense to the penalty assessment was frivolous.   API claims this rule chills the option to pursue a stay by threatening to retroactively reverse the benefits, thereby cutting off due process and appeal rights.

ONRR again argues API fails to meet the test in *Scherer* as its argument concedes any stay may be forfeit only in certain cases (i.e., only if the ALJ determines the defense to a Notice is frivolous).   ONRR also argues the rule is reasonable in that it warns and deters against bringing baseless defenses, and it does not violate due process as there is no constitutional right to bring a frivolous suit.   In short, it is no different than warnings and sanctions imposed for pursuing frivolous claims.

The rule at issue provides:

> Notwithstanding [the ALJ's determination that a stay of the accrual of penalties is warranted along with the posting of a bond or surety (or demonstration of financial solvency)], if the ALJ determines that your defense to a Notice is frivolous, and a civil penalty is owed, you will forfeit the benefit of the stay, and penalties will be calculated as if no stay had been granted.

30 CFR §1241.11(b)(5).   This provision must be understood in the context of the general provisions for Department Hearings and Appeals Procedures:

> **Standards and procedures for obtaining a stay**. Except as otherwise provided by law or other pertinent regulation:
>
> (1)   A petition for a stay of a decision pending appeal shall show sufficient justification based on the following standards:
>
> (i) The relative harm to the parties if the stay is granted or denied,
>
> (ii) The likelihood of the appellant's success on the merits,

> (iii) The likelihood of immediate and irreparable harm if the stay is not granted, and
>
> (iv) Whether the public interest favors granting the stay;
>
> (2) The appellant requesting the stay bears the burden of proof to demonstrate that a stay should be granted . . . .

43 CFR § 4.21(b). By its rule, ONRR thereby interjects a subsequent determination by the ALJ for royalty cases wherein a stay was previously granted but the civil penalty is affirmed – namely, a determination as to whether the appellant's defense was frivolous. If that "frivolous" determination is made, penalties will be calculated as if no stay had been granted. 30 CFR 1241.11(b)(5). On this point, it is important to note that civil penalties for violations not only accrue daily, but interest accrues on the principle. A stay stops this accrual and thus the loss of this benefit has the potential for enormous, retroactive effect.

As to API's due process claim, the Court finds that argument unpersuasive as API fails to identify any case supporting the proposition that an appellant is entitled to a stay to pursue a frivolous defense. Nonetheless, the Court concludes the rule at issue is an abuse of discretion and not in accordance with law. The rules and regulations governing requests for a hearing provide for a stay if the ALJ determines on the filings that a stay is warranted. There is no basis in the record for a second bite following adjudication of the case, particularly when ONRR is not required to file a response to any petition for stay, and the potential loss of benefit is so significant. If ONRR believes a stay is not warranted, including the argument that the defense is frivolous, ONRR has the right to,

and should file a response to the stay petition rather than wait on an outcome at some undetermined later date and then assert frivolity.

For these reasons, the Court finds the provision at 30 CFR §1241.11(b)(5) is an abuse of discretion and not in accordance with law.

VIII.  Economic Impacts

API argues the rule presents "Summary Cost and Royalty Impact Data" that is grossly understated and shows the rule is unjustified.  ONRR responds that it has violated no substantive statute or regulation with respect to undertaking an economic analysis, and thus API's complaint is not a cognizable APA claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990).  Even if a claim were present, given the complex nature of economic analysis typical in the regulation promulgation process, judicial review is very deferential.  *Nat'l Ass'n of Home Builders v. EPA,* 682 F.3d 1032, 1040 (D.C. Cir. 2012).  ONRR argues API cannot meet its high burden simply by engaging in speculation about the number, type and amount of penalties that may be imposed in the future.  In short, ONRR argues it performed a reasonable economic analysis relying on recent data (*see* AR3653) and acknowledging the industry could experience some impacts with respect to increases in civil penalties.

The rule does not contain, nor does it apparently require, an economic impact analysis.  The "Summary Cost and Royalty Impact Data" referenced by API is in a portion of the rule entitled "Procedural Matters."  81 F.R. 50315.  API has not identified any substantive law violated with respect to this procedural matter.  API appears to challenge the summary cost data, and not the royalty impact data.  However, the rule

provides the cost and benefit information in this "Procedural Matter" is used only as the basis for Departmental certifications ("items 2 through 10").[11]  *Id*.  API has not brought claims under any of these "items," whether they are laws or executive orders.  Further, there is no argument made that any of these "items" mandate anything more than the summary cost data presented, and the record is completely silent as to API's standing to complain concerning a procedural matter apparently used for agency certifications.  As a result the Court declines to consider this issue further.

## CONCLUSION

Based on the forgoing, it is ORDERED:

1.     API's challenge to 30 CFR § 1241.11(b)(5) is GRANTED.  That provision is VACATED;

2.     The remaining portions of API's petition are DENIED AND DISMISSED.

Dated this __6__ day of August, 2018.

NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE

---

[11] These items are entitled "Regulatory Planning and Review," "Regulatory Flexibility Act," "Small Business Regulatory Enforcement Fairness Act," Unfunded Mandates Reform Act," "Takings," "Federalism," "Civil Justice Reform," "Consultation With Indian Tribal Governments," "Paperwork Reduction Act," "NEPA," and "Effects on the Energy Supply."